UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------    x
RONALD PAKUTKA,                    :
                                   :
         Plaintiff,                :
                                   :
v.                                 :   Civil No. 3:20-cv-652(AWT)
                                   :
PALUMBO TRUCKING,                  :
                                   :
         Defendant.                :
-------------------------------    x
```

## RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Ronald Pakutka, brings this action against defendant Palumbo Trucking, his former employer. The complaint has three counts: a claim for wrongful termination in violation of the Surface Transportation Assistance Act ("STAA"), 49 U.S.C. § 31105(a)(1), (Count One); a claim for wrongful termination in violation of public policy embodied in regulations of the Connecticut Department of Energy and Environmental Protection (Count Two); and a claim for wrongful termination in violation of public policy embodied in regulations of the Federal Motor Carrier Safety Administration (Count Three). The defendant moves for summary judgment on all counts. For the reasons set forth below, the defendant's motion is being granted.

## I.   Factual Background

On June 3, 2019, the defendant hired the plaintiff as a truck driver. He worked for the defendant until October 28,

2019, and he contends that at that point he had been constructively terminated.

The plaintiff contends that the defendant "retaliated against [him] for complaining about the safety, environmental and [FMSCA] violations." Compl. at 2, ECF No. 1. The plaintiff complained on a number of occasions that there had been safety and environmental violations at the defendant's facilities. In the summer of 2019, the plaintiff complained to the defendant's safety coordinator, Dawn Burke ("Burke"), about the air quality at the defendant's rail yard in New Haven. Also in the summer of 2019, he complained to the defendant's garage supervisor, Nick Palumbo, regarding trailer washing and the improper disposal of liquid waste outside wash bays at the rail yard; he made the same complaint to the Connecticut Department of Energy and Environmental Protection ("CT DEEP") on September 13, 2019. In September 2019, he complained to CT DEEP and the National Response Center ("NRC") regarding cement blowing into the air and piles of cement at the defendant's rail yard. On September 13, 2019, he complained to CT DEEP regarding fuel spillage and improper disposal of waste oil at the defendant's North Branford facility. On September 28, 2019, he complained to the Occupational Safety and Health Administration ("OSHA") regarding a blow down hose without a filtering device sending cement particles into the air.

2

The plaintiff also complained about environmental and safety violations at other facilities the defendant serviced but did not own or operate. On September 25, 2019, he complained to Burke about the absence of a "hatching station" at a company the defendant serviced in Peabody, Massachusetts. On October 4, 2019, he complained to the New York Department of Environmental Conservation and Burke about cement blowing in the air at the Lehigh-Heidelberg Cement Group, a company in Glens Falls, New York. On October 24, 2019, he complained to OSHA about a catch pan being overloaded at a quarry in Meriden, Connecticut.

The plaintiff made one complaint about a violation of the Federal Motor Carrier Safety Administration ("FMCSA") regulations. On September 11, 2019, the plaintiff sent an email to FMCSA and OSHA asserting that the defendant instructed him and other employees to violate FMCSA hours of service ("HOS") regulations. The email stated:

> The regular practice of [the defendant] is to intentionally violate HOS (Hours of Service) regulations. . . . I have witnessed misuse of the ELD (Electronic Logging Device) and the HOS first hand. ELD's are turned on and off by drivers at company discretion to permit longer hours to drive and be on duty. . . . Today, I will no longer abide by orders from Dispatch to engage in any of the above activity.

Def. Ex. 5, at 2, ECF No. 36-5.

Later that day, the plaintiff sent another email to FMCSA and OSHA, stating, "I completed my full daily cycle of HOS and

3

refused to go beyond those limits with Palumbo Trucking today[.]" Def. Ex. 6, at 2, ECF No. 41-1. In this email, the plaintiff attached images of text messages he had exchanged with the defendant's dispatcher earlier that day. In those texts, the defendant wrote that "I had to stop at a safe rest area[.] . . . Usually, you would have me complete the delivery outside of HOS limits but I'm not doing it. I plan on sticking within the confines of the DOT FMCSA regulations." Id. at 4. The dispatcher's response via text was "No problem[.]" Id. at 3.

During his deposition, the plaintiff testified that another of the defendant's employees told him that he had been instructed to violate HOS regulations. The plaintiff stated that "another driver told me he used paper logs and an older vehicle, his name was Terry . . . [and] that he had got in trouble before with Palumbo with ELDs saying 'we had to pay a fine for cooking the books.' So then he specifically went into a tractor with a paper log[] so he could falsify them." Dep. Ronald Pakutka. Ex. 1, at 56:23–57:5, ECF No. 36-1.

The plaintiff maintains that after he made these complaints the defendant retaliated against him in several ways. First, on September 16, 2019, the plaintiff and another of the defendant's employees were required to take a random drug test. The plaintiff claims that this was retaliatory and that the results of the test were withheld from him. Second, beginning the week

4

of September 22, 2019, the defendant altered and reduced the
plaintiff's routes, which the plaintiff maintains lowered his
weekly pay and forced him to remain on the road for longer
periods of time. Third, the plaintiff maintains that on October
27, 2019, the defendant's owner, David Palumbo, falsely accused
the plaintiff of cutting a hole in a waste oil tank and
intentionally spilling diesel fuel on the ground, and that David
Palumbo did so as a pretense for placing the plaintiff on
administrative leave.

On October 4, 2019, OSHA commenced an administrative
proceeding and informed the defendant that the plaintiff had
alleged "retaliatory employment practices in violation of the
Surface Transportation Assistance Act (STAA), 49 U.S.C. §31105,
the Clean Air Act (CAA), 42 U.S.C. §7622, Section 11(c) of the
Occupational Safety and Health Act (OSHA) and 29 U.S.C. §660 and
the Federal Water Pollution Control Act (FWCPA), 33 U.S.C.
§1367." Def. Ex. 2, at 2, ECF No. 36-2.

In the early morning hours on October 26, 2019, the
plaintiff and officials from CT DEEP arranged to meet at the
defendant's facility in North Branford. The plaintiff and two
representatives from CT DEEP walked around the yard. The North
Branford Police Department called the defendant's owner, David
Palumbo, and asked him to come to the defendant's North Branford
facility. David Palumbo, the plaintiff, North Branford police

officers, and two CT DEEP agents were all present at the North Branford facility at approximately 3:00 AM on October 26, 2019. They saw that a plastic container used to store used motor oil was leaking and that there was a cut at the bottom of the tank. Additionally, there was diesel fuel spilled on the ground near the diesel fuel pump and pump pads.

The defendant maintains video surveillance of its facility twenty-four hours a day, seven days a week. The video surveillance is collected by multiple, motion-activated cameras and covers the entirety of the yard and the interior space the drivers use. The defendant identifies its equipment by number, and the plaintiff was driving truck number 24 on the route that ended when he returned to the defendant's facility on October 25-26, 2019.

After the meeting with the plaintiff, CT DEEP investigators, and North Branford police officers, the defendant reviewed the surveillance video of the facility covering the period before the CT DEEP agents arrived. In the surveillance video, truck number 24 can be seen driving onto the property and to the area where the scrap metal dumpster is located and near the plastic waste oil container. In his sworn affidavit, David Palumbo stated that this was an area of the yard in which "no truck would be parked or fueled . . . [and] [t]here would be no business reason for a driver to pull the truck into that area.

There is no truck parking in that area as each vehicle is assigned a space in the lot. The dumpster is used for scrap metal and is not used for drivers to dispose of garbage from their trucks." Palumbo Aff. at ¶ 20(b), ECF No. 37. The plaintiff then exited the truck, holding a flashlight, and walked past the dumpster. During his deposition, the plaintiff maintained that he was in the area to urinate. However, in his sworn affidavit, David Palumbo stated that "I saw on the video that he urinated on or at his truck after he parked in his designated parking spot. I also saw on the video that he entered the building where there are lavatory facilities." Id. ¶ 20(c).

The surveillance video also shows a person, identified by David Palumbo as Pakutka, splashing diesel fuel on the ground while fueling truck number 24. During his deposition, Pakutka admits that the video shows truck number 24 and that the person fueling it is "pouring diesel" on the ground, but states that he "can't tell one way or the other" if the person is him and suggests that the video is "alter[ed]." Dep. Ronald Pakutka, Pl. Ex. 2, at 106:21, 109:18, 108:14, ECF No. 39-3.

On October 27, 2019, the defendant placed the plaintiff on unpaid, administrative leave. The defendant maintains this was because of "the video evidence that Pakutka may have committed sabotage by cutting the plastic oil container and pouring diesel fuel on the ground, and the ongoing investigation by the

Company, the North Branford police, and the DEEP." Def. Local
Rule 56(a) Statement, at ¶ 30, ECF No. 35. On October 28, 2019,
the plaintiff resigned, and on November 14, 2019, OSHA informed
the defendant that the plaintiff had amended his complaint to
include the plaintiff's suspension. See Def. Ex. 3, at 2, ECF
No. 36-3.

On May 14, 2020, approximately one week after filing the
complaint in this action, the plaintiff notified OSHA that he no
longer wanted to pursue his claims under the Clean Air Act, the
Occupational Safety and Health Act, and the Federal Pollution
Control Act. On May 20, 2020, OSHA informed the plaintiff that
his request to withdraw his claims under those statutes was
approved and that, "As a result of your decision to proceed with
this case in Federal Court, rather than before the Secretary of
Labor, your complaint under the Surface Transportation Act
(STAA) . . . before this office is hereby dismissed.
Additionally, the request for withdrawal under the remaining
statutes is approved. By withdrawing your complaint, you are
waiving your right to appeal OSHA's determination." Def. Ex. 4,
at 2, ECF No. 36-4.

## II.  Legal Standard

A motion for summary judgment may not be granted unless the
court determines that there is no genuine issue of material fact
to be tried and that the facts as to which there is no such

issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry of summary judgement . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce of Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial factual disputes will not prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant . . . and draw all reasonable

inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d
33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v.
Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).
Because credibility is not an issue on summary judgment, the
nonmovant's evidence must be accepted as true for purposes of
the motion. Nonetheless, the inferences drawn in favor of the
nonmovant must be supported by evidence. "[M]ere speculation and
conjecture" is insufficient to defeat a motion for summary
judgment. Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315
(2d Cir. 2007) (quoting Western World Ins. Co. v. Stack Oil,
Inc., 922 F.2d 118, 121 (2d Cir. 1990)). Moreover, the "mere
existence of a scintilla of evidence in support of the
[nonmovant's] position" will be insufficient; there must be
evidence on which a jury could "reasonably find" for the
nonmovant. Anderson, 477 U.S. at 252.

    Finally, the nonmoving party cannot simply rest on the
allegations in its pleadings since the essence of summary
judgment is to go beyond the pleadings to determine if a genuine
issue of material fact exists. See Celotex Corp., 477 U.S. at
324. "Although the moving party bears the initial burden of
establishing that there are no genuine issues of material fact,"
Weinstock, 224 F.3d at 41, if the movant demonstrates an absence
of such issues, a limited burden of production shifts to the
nonmovant, who must "demonstrate more than some metaphysical

11

doubt as to the material facts, . . . [and] must come forward
with specific facts showing that there is a genuine issue for
trial." Aslanidis v. United States Lines, Inc., 7 F.3d 1067,
1072 (2d Cir. 1993)(quotation marks, citations, and emphasis
omitted). Furthermore, "unsupported allegations do not create a
material issue of fact." Weinstock, 224 F.3d at 41. If the
nonmovant fails to meet this burden, summary judgment should be
granted.

## III. Discussion

The defendant moves for summary judgment on all three
counts. The motion is being granted for the following reasons.
As to Count One, only one of the plaintiff's whistleblower
complaints could be the basis for his claim under the STAA,
namely the alleged violations of FMCSA HOS regulations. But the
plaintiff fails to create a genuine issue of material fact as to
whether the defendant's proffered reason for placing him on
administrative leave was a pretext for unlawful retaliation. As
to Counts Two and Three, the plaintiff cannot bring a claim for
wrongful termination because statutory remedies existed for his
claims.

### A. Count One

In Count One, the plaintiff claims that the "defendant's
retaliation and constructive termination of the plaintiff was
directly in response to the plaintiff's whistle blowing of the

defendant's violations of safety standards and regulations,"
which "violated the STAA, 40 U.S.C. 31105." Compl. at 5.

The plaintiff does not specify which of his complaints is
the basis for his claim in Count One. But he made only one
complaint reporting a violation of HOS regulations. His other
complaints relate to poor air quality, improper disposal of
liquid waste and acid from trailer washing, cement particles
blowing and contaminating the air and nearby waterways, fuel
spillage, and improper disposal of motor oil. The environmental
and safety complaints relating to properties the defendant
serviced involve the absence of a "hatching station," cement
blowing in the air, and an overloaded catch pan.

Although the plaintiff's HOS complaint relates to a
violation a commercial motor vehicle safety or security
regulation, standard or order, his other complaints do not. An
employee complaint unrelated to a commercial motor vehicle
safety or security regulation, standard or order is not
protected activity under the STAA. See Harrison v. Admin. Rev.
Bd. of U.S. Dep't of Lab., 390 F.3d 752, 757 (2d Cir. 2004) (a
plaintiff's complaint regarding a yard horse is not a protected
activity under the STAA because yard horses are not commercial
motor vehicles and, thus, complaints regarding them "would not
'relate[ ] to a violation of a commercial motor vehicle safety
regulation'") (quoting 49 U.S.C. § 31105(a)(1))); Calhoun v.

13

U.S. Dep't of Lab., 576 F.3d 201, 213 (4th Cir. 2009) (a
plaintiff's complaint regarding his employer's refusal to allow
him to manually inspect the equipment on his vehicle is not a
protected activity under the STAA because he "failed to show
that his complaints concerned actual violations of the [FMCSA
regulations].").

The plaintiff does not specifically cite any motor vehicle
safety or security regulation, standard or order to which he
claims his environmental complaints pertain, or even generally
allege that these environmental and safety complaints concern
motor vehicle safety. Thus, there is no genuine issue as to the
fact that the plaintiff's environmental complaints cannot be the
basis for a claim under the STAA. The HOS complaint is the only
complaint that could be the basis for Count One.

"In order to establish a prima facie case of retaliatory
discharge [in a STAA claim], a complainant must demonstrate that
1) he was involved in a protected activity, 2) he was later
subject to adverse employment action, and 3) there was a causal
link between the protected activity and the adverse action."
Castle Coal & Oil Co. v. Reich, 55 F.3d 41, 46 (2d Cir. 1995).
See Calhoun, 576 F.3d at 209; Irizarry v. Lily Transportation
Corp., 266 F. Supp. 3d 600, 604 (D. Conn. 2017). After a
plaintiff has established a prima facie case, "the burden shifts
to the employer to provide evidence of a legitimate, non-

retaliatory reason for the adverse employment action. . . . If the employer provides such evidence, the burden shifts back to the employee to demonstrate that the proffered reason is merely a pretext for unlawful retaliation." Irizarry, 266 F. Supp. 3d at 604.

The STAA "protects from retaliation an 'employee . . . [who] has filed a complaint or begun a proceeding related to a violation of a commercial motor vehicle safety or security regulation, standard, or order.'" Calhoun, 576 F.3d at 212 (quoting 49 U.S.C.A. § 31105(a)(1)). However, "[the] complaint must be based on a reasonable belief that the company was engaging in a violation of a motor vehicle safety regulation." Calhoun, 576 F.3d at 209 (citations and internal quotation marks omitted). See also Gaines v. K-Five Const. Corp., 742 F.3d 256, 268 (7th Cir. 2014) (collecting caselaw from the Fourth, Sixth, and Eleventh Circuits and holding that "an employee who files a reasonable safety complaint in good faith is protected by 49 U.S.C. § 31105(a)(1)(A)(i) even when that complaint contains inaccurate information."). Thus, to satisfy the first element of a prima facie case, the plaintiff must establish that he held a reasonable, good-faith belief that the defendant was violating HOS regulations.

There is no evidence in the record that the defendant was violating HOS regulations. On September 11, 2019, the plaintiff

had an exchange of text messages with the defendant's dispatcher. The plaintiff texted that he, "Had to stop at a safe rest stop area for commercial vehicles. . . . Usually you would have me complete the delivery outside of HOS limits but I'm not doing it. I plan on sticking within the confines of the DOT FMCSA regulations." Def. Ex. 6, at 3, ECF No. 41-1. But the dispatcher's response was, "No problem." Id. Notwithstanding the plaintiff's characterization of these text messages in his email to FMCSA and OSHA, they do not support a conclusion that the defendant violated HOS regulations or instructed the plaintiff to violate HOS regulations. Moreover, on August 15, 2019, approximately one month before the plaintiff filed his HOS complaint with OSHA and FMCSA, the plaintiff himself violated HOS regulations by driving longer than permitted. In response, the defendant gave him a written warning and, thus, did not condone or encourage the violation. See Def. Ex. B, at 2, ECF No. 38-2.

However, the plaintiff's burden is to establish a reasonable, good-faith belief that the defendant was violating motor vehicle safety regulations, not that the defendant was actually violating motor vehicle safety regulations. Also, "[t]he plaintiff's burden at [the prima facie case] stage is slight; he may establish a prima facie case with de minimis evidence." Wanamaker v. Columbian Rope Co., 108 F.3d 462, 465

(2d Cir. 1997). The plaintiff's September 11, 2019 email to OSHA and FMCSA, in which he claimed to have knowledge of other drivers who were instructed by the defendant to violate HOS regulations by turning off Electronic Logging Devices, his deposition testimony regarding statements allegedly made by the defendant instructing him and at least one other driver to do so, and his deposition testimony that another driver told the plaintiff that the other driver had also been instructed by the defendant to do so are sufficient to meet the plaintiff's "de minimis" burden to demonstrate that he had a reasonable, good-faith belief that the defendant was violating motor vehicle safety regulations.[1]

The third element of a prima facie case is that "a complainant must demonstrate . . . a causal link between the protected activity and the adverse action." Castle Coal & Oil Co., 55 F.3d at 46. The plaintiff argues that three actions by the defendant establish the requisite causal connection. The plaintiff contends that the adverse employment action began on September 16, 2019, when the plaintiff was required to take a

---

[1] The plaintiff's statements are not being offered for the truth of the matter asserted. Rather, they are being offered to show what the plaintiff believed. Therefore, they are not hearsay. See Hinton v. City Coll. of New York, No. 05 CIV. 8951, 2008 WL 591802, at *6 n.8 (S.D.N.Y. Feb. 29, 2008) (allowing use of hearsay statements to prove that the plaintiff had a reasonable, good-faith belief that the defendant was violating the law because "[a]lthough . . . hearsay . . . cannot be used for the truth of the matter asserted, it, as well as other hearsay statements, may be relevant to the question of [a plaintiff's] good faith in filing her various complaints.").

random drug test. He also contends that the defendant took an adverse employment action against him the week of September 22, 2019 by altering and reducing his routes, effectively lowering his weekly pay and keeping him on the road longer. However, although the plaintiff made his HOS complaint to OSHA and FMCSA on September 11, 2019, the defendant was not aware of the plaintiff's HOS complaint until after October 4, 2019, when OSHA sent a notice that the complaint had been filed. Def. Ex. 2, at 2, ECF No. 36-2. Thus, neither of these alleged acts of retaliation could have been in response to the plaintiff's HOS complaint.

The third action of the defendant on which the plaintiff relies is the fact that on October 27, 2019 the defendant placed the plaintiff on administrative leave. This date is sufficiently proximate to October 4, 2019 to establish the requisite causal connection. See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, (2001) ("[C]ases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." (citations and internal quotation marks omitted)); Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) ("Though this [c]ourt has not drawn a bright line defining, for the purposes of a prima facie case,

the outer limits beyond which a temporal relationship is too
attenuated to establish causation, we have previously held that
five months is not too long to find the causal relationship.").

However, the defendant is nonetheless entitled to summary
judgment on this claim because the plaintiff has failed to
create a genuine issue of material fact as to whether the
defendant's proffered reason for placing him on administrative
leave was merely a pretext for unlawful retaliation.

The defendant has met its burden of providing evidence of a
legitimate, non-retaliatory reason for the adverse employment
action. The defendant has produced evidence that the plaintiff
"committed sabotage" at the defendant's North Branford facility.
Def. Local Rule 56(a)(1) Statement ¶ 30. The video evidence the
defendant states was the basis for placing the plaintiff on
administrative leave shows that, shortly before the meeting the
plaintiff arranged with the CT DEEP representatives, a person
driving the truck assigned to the plaintiff splashed diesel fuel
on the ground and drove to the area where the plastic waste oil
container was stored. The plaintiff asserts that he cannot be
sure that he is the person in that video. However, at most this
assertion constitutes evidence that the defendant may have been
wrong in placing the plaintiff on administrative leave. The
plaintiff produces no evidence that could support a conclusion
that the defendant's reliance on the video evidence in deciding

to place the plaintiff on administrative leave was merely a pretext for unlawful retaliation. "[U]nsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41.

The plaintiff argues that the defendant retaliated against him in response to the plaintiff's refusal to drive in violation of HOS regulations on September 11, 2019, in violation of the STAA, 49 U.S.C. § 31105(a)(1)(B), which provides that, "A person may not discharge an employee, or discipline or discriminate against an employee regarding pay, terms, or privileges of employment, because the employee refuses to operate a vehicle because (i) the operation violates a regulation, standard, or order of the United States related to commercial motor vehicle safety, health, or security." There is no claim in the complaint that the defendant violated this section of the STAA by retaliating against the plaintiff for refusing to drive in violation of HOS regulations. The plaintiff first raises it in his opposition to the defendant's motion for summary judgment. However, a party may not use his opposition to a dispositive motion to amend the complaint. See Avillan v. Donahoe, 483 F. App'x 637 (2d Cir. 2012); Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998); Brandon v. City of New York, 705 F. Supp. 2d 261, 278 (S.D.N.Y. 2010) ("It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment.").

**B. Counts Two and Three**

Counts Two and Three are claims for wrongful termination in violation of an important public policy, relying on CT DEEP's environmental regulations and the FMCSA's safety regulations, respectively.

To prevail on a claim for wrongful termination in violation of public policy, an employee must establish that his employer discharged him for "a reason whose impropriety is derived from some important violation of public policy." Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 475 (1980).

In Campbell v. Town of Plymouth, the court recognized that "our public policy exception to the at-will doctrine is available only in cases in which there are no other available remedies and 'permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated.'" 74 Conn. App. 67, 74 (2002) (quoting Atkins v. Bridgeport Hydraulic Co., 5 Conn. App. 643, 648 (1985)). Consequently, if a statutory remedy is available, the plaintiff must avail himself of that statutory remedy and cannot bring a claim for wrongful termination. See, e.g., Pickering v. Aspen Dental Mgmt., Inc., 100 Conn. App. 793, 796-99 (2007) (dismissing violation-of-public-policy claim where there was a claim under Conn. Gen. Stat. § 51-247a(d)-(e) for the employer's alleged violation of Conn. Gen. Stat. § 51-247a); Storm v. ITW Insert Molded Prod., a

Div. of Ill. Tool Works, Inc., 400 F. Supp. 2d 443, 447–48 (D. Conn. 2005) (dismissing claim where federal and state statutes provided remedies for age discrimination); Armstead v. Stop & Shop Cos., No. 3:01 CV 1489 JBA, 2003 WL 1343245, at *3 (D. Conn. Mar. 17, 2003) (dismissing claim where federal and state statutes provided remedies for disability discrimination).

A statutory remedy existed under Conn. Gen. Stat. § 31-51m, with respect to the plaintiff's complaints about environmental and safety violations. Section 31-51m provides, "No employer shall discharge, discipline or otherwise penalize any employee because (1) the employee . . . reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body." Conn. Gen. Stat. § 31-51m. Also, the plaintiff pursued remedies under three federal statutes: the Clean Air Act, 42 U.S.C. § 7622; Section 11(c) of the Occupational Safety and Health Act, 29 U.S.C. § 660(c); and the Federal Water Pollution Control Action, 33 U.S.C. § 1367. However, he chose to withdraw his claims under those statutes.

Thus, the plaintiff cannot bring claims for wrongful termination in violation of the public policy embodied in CT DEEP's environment regulations or the FMSCA's safety regulations.

**IV.  Conclusion**

For the reasons set forth above, the defendant's Motion for Summary Judgment (ECF No. 33) is hereby GRANTED. The Clerk shall enter judgment accordingly and close the case.

It is so ordered.

Signed this 28th day of January 2022 at Hartford, Connecticut.

_____/s/ AWT_____
Alvin W. Thompson
United States District Judge
